## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KELVIN PAUL WELLS**                               **CIVIL ACTION**

**VERSUS**                                          **NO. 13-830-BAJ-RLB**

**CAROLYN COLVIN,**
**COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on May 20, 2016.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KELVIN PAUL WELLS**                                                   **CIVIL ACTION**

**VERSUS**                                                                      **NO. 13-830-BAJ-RLB**

**CAROLYN COLVIN,**
**COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Kelvin Paul Wells (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Supplemental Security Income under the Social Security Act. (R. Doc. 1). Plaintiff's appeal is opposed. (R. Doc. 31).[1] Having found all of the procedural prerequisites met (Tr. 1-5), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). For the reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

---

[1] The Commissioner's position is set forth in a "Memorandum in Support of Defendant's Motion for Summary Judgment." (R. Doc. 31). No motion for summary judgment was filed. Consistent with the practice in this district and this Court's prior order (R. Doc. 17), an action for judicial review of the administrative decision is to proceed with plaintiff filing a Memorandum in Support of Appeal and defendant filing an Opposition Memorandum. The Commissioner's Memorandum has been considered as an Opposition to Plaintiff's Appeal.

I.      PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income in September of 2010, alleging disability based on post-traumatic stress disorder, depression, back injuries, congestive heart failure and hypertension. (Tr. 291-97, 340).  Plaintiff's application was initially denied by an Administrative Law Judge, who first held an administrative hearing (Tr. 45-65) before issuing an unfavorable decision on February 2, 2012. (Tr. 114-24).  The Appeals Council granted Plaintiff's request for review and remanded the application back to the ALJ for further consideration on December 6, 2012. (Tr. 133-35).  The ALJ held a second hearing (Tr. 29-44) before issuing a second written decision denying Plaintiff's application on August 2, 2013 (Tr. 11-21).  Plaintiff's request for review of the ALJ's second decision was denied by the Appeals Council on October 15, 2013. (Tr. 1-5).  The ALJ's second decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

### III.   ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden

shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had not engaged in substantial gainful activity since September of 2010, when he filed his application.

2. Plaintiff suffered from the following severe impairments: degenerative disc disease, hypertension, depressive disorder and personality disorder.

3. Plaintiff's impairments did not meet or medically equal the severity of a listing.

4. Plaintiff retained the residual functional capacity (RFC) to perform light work limited to simple, routine and repetitive tasks with no more than occasional contact with coworkers and the general public.

5. Plaintiff could no longer perform any past relevant work.

6. At the relevant time, Plaintiff was considered a "younger individual," as defined by the Act.

7. Plaintiff had a high school education and was capable of communicating in English.

8. The transferability of job skills was not material to the ultimate determination of disability.

9. Considering Plaintiff's age, education, work experience and RFC, there are jobs existing in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability since September of 2010, as defined by the Social Security Act.

(Tr. 14-21).

## IV.   DISCUSSION

### A.   Consideration of Additional Evidence

As an initial matter, the Court notes that Plaintiff attached 58 pages of documents to his Memorandum in Support of Appeal for consideration. For the most part, these documents are already part of the administrative transcript. (R. Doc. 27-1 at 1-7, 17, 20, 21, 29-31, 33-35, 37-48, 55, 57); (Tr. 90-92, 96, 437, 353, 311, 845, 852, 825, 485, 498, 484, 497, 824, 495, 853, 848, 501,823, 503, 826, 822, 818-20, 504, 496). However, several documents do not appear to be included in the administrative record and are not identified as such by the Plaintiff. (R. Doc. 27-1 at 8-16, 18, 19, 22-28, 32, 36, 49-54, 56, 58).

The Court cannot consider evidence outside of the administrative record on appeal. *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981) ("No evidence external to the administrative record is generally admissible in reviewing an administrative action pursuant to 42 U.S.C. 405(g)."); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985) ("[D]istrict courts in § 405(g) cases may not consider evidence outside the administrative record."). The Court may, however,

consider whether new and material evidence warrants remand under sentence six of § 405(g). *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

Here, Plaintiff does not argue that this information constitutes new and material evidence warranting remand. He merely attaches the documents in support of his appeal. In light of the above standard, the extra-record evidence submitted by Plaintiff cannot be considered on judicial review.

### B. Residual Functional Capacity

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work requiring only simple, routine and repetitive tasks and "no more than occasional contact with coworkers and [the] general public." (Tr. 17). Plaintiff, however, argues that his "medical record confirms" that he has "no residual functional capacity." (R. Doc. 27 at 1). Specifically, his medications cause disabling side effects, as do the "illnesses derived from [Plaintiff's spinal] injuries." (R. Doc. 32 at 1). Moreover, Plaintiff claims that the ALJ ignored favorable evidence, including the "findings of Dr. Isaza and Dr. Orouke," and his family's medical history. (R. Doc. 32 at 1-2).

After considering Plaintiff's arguments and reviewing the entire record, the Court finds substantial evidence supporting the ALJ's findings. Moreover, Plaintiff's arguments are not corroborated by the medical evidence found in the administrative transcript.

First, the treatment records do not support disabling side effects of Plaintiff's medications. On May 23, 2013, Plaintiff told the ALJ that his medication, Tramadol, made him "extremely tired and fidgety." (Tr. 37). However, Plaintiff has consistently taken Tramadol since 2010 and failed to report these side effects to his doctors. (Tr. 1684, 1687-89, 1700, 1711, 1757, 1763, 1792, 1806, 1880). Because Plaintiff's treatment records do not corroborate the

negative side effects he alleged during the May 23, 2013 hearing, substantial evidence supports the ALJ's rejection of disabling side effects.

Second, Plaintiff's medical records do not indicate the existence of disabling "illnesses derived from [spinal] injuries." (R. Doc. 32 at 1). For example, a physical examination in March of 2010 showed normal strength, reflexes, sensation and range of motion. (Tr. 486). A July 2010 spinal x-ray found a "normal lumbosacral spine" with "normally maintained" disc spaces, "no fractures," "no evidence of spondylosis" and "no change" from the previous study in 2009. (Tr. 676). An October 2010 examination of Plaintiff's spine was likewise normal. (Tr. 669-73). Doctors also found normal gait and posture; no pain with motion; an absence of weakness, atrophy, tenderness or spasm; and normal range of motion, reflexes and motor function. (Tr. 670-72). On May 17, 2012, Plaintiff's self-reported pain level was "0" and his doctors found no edema, normal gait, normal reflexes, intact sensation and the ability to "move all extremities well." (Tr. 1762-63). Ultimately, Plaintiff was advised to improve his diet, lose weight and to "exercise at least 30 minutes 3 times per week." (Tr. 1765). In May of 2013, Plaintiff again reported a "0" pain level. (Tr. 1682). Although Plaintiff complained of chronic lower back pain, doctors noted that he had not been prescribed physical therapy or epidural steroid injections. (Tr. 1687). On examination, Plaintiff's doctors observed "slow gait[,] shorter than expected strides" and 4 out of 5 strength in both lower extremities, but noted "some poor effort" by Plaintiff. (Tr. 1689). A TENS unit was then prescribed. (Tr. 1687, 1689). Finally, Plaintiff was instructed by doctors in June of 2013 to engage in "moderate exercise" 3 to 5 times per week. (Tr. 1628).

As the record indicates, Plaintiff's spinal exams were consistently normal. He was prescribed conservative treatment and often instructed to exercise on a regular basis. Considering the medical evidence, substantial evidence supports the ALJ's decision to reject

Plaintiff's claims of disabling spinal injuries and related illnesses and instead find him capable of performing the physical demands of light work.

Finally, the ALJ did not err by ignoring the opinions Dr. Isaza and Dr. Orourke or evidence of Plaintiff's family medical history, as Plaintiff claims. To begin, the fact that members of Plaintiff's family might suffer from certain conditions, does not show that Plaintiff also suffers from those conditions or that any condition would be disabling. Turning to "Dr. Isaza and Dr. Orourke," Plaintiff has not pointed to any medical findings by either physician that would support his claim of disability. In fact, Plaintiff has not pointed to any treatment records within the 1,961 page transcript attributable to either Dr. Isaza or Dr. Orourke. After combing through the record, the Court is unaware of any records from a physician named "Dr. Orourke." Otherwise, the Court has only found two records attributable to Dr. Jorge Isaza — an exam with minimal findings occurring on June 23, 2000 and a June 9, 2004 disability application form indicating that it is "unknown" to Dr. Isaza whether Plaintiff's conditions are disabling. (Tr. 803-05, 827). Neither of these records support Plaintiff's claim for disability. More importantly, the only treatment record following an examination by Dr. Isaza is dated 10 years prior to the relevant time period — between September 2010 and August 2013.[2] *See Dunn ex rel. K.D. v. Colvin*, 2015 WL 1476806, at *4 n.2 (M.D. La. March 31, 2015) (For SSI applications, the relevant time period is between the date of the application and the ALJ's decision.). As such, Plaintiff's family medical history and the opinions of Dr. Isaza and Dr. Orourke do not cast doubt of the existence of substantial evidence supporting the ALJ's decision.

---

[2] Plaintiff also argues that his conditions have not improved and must now be disabling as the Commissioner first found that he suffered from "severe impairments, mental and physical," in 2001 in connection with a separate application. (R. Doc. 27 at 2). Aside from the fact that Plaintiff does not name any specific impairment, the status of Plaintiff's conditions prior to 2010 is outside of the relevant time period. *See Dunn*, 2015 WL 1476806, at *4 n.2.

C.      Ability to Perform Other Work

Plaintiff's final argument is that his mental impairments render him unable to perform any alternative work, as the Commissioner's own vocational expert (VE) "testified on page 895 of [the] transcript that emotional problems would prevent any alternative work." (R. Doc. 27 at 2). The VE testimony referred to by Plaintiff is attached to his Memorandum (R. Doc. 27-1 at 5). It is also found in the administrative record on page 437.

The single page of VE testimony that Plaintiff relies on is not dated and the remainder of the administrative hearing during which that testimony was given is not available. Although the date of the testimony is unclear, it is clear that this is not the testimony of either vocational expert appearing at the two administrative hearings associated with Plaintiff's current application or the relevant time period.

On the single page found in the record, the unknown VE is presented with a hypothetical person with Plaintiff's vocational background who suffers from "emotional problems" and "might have anger problems" that "would prevent even one- and two-step type jobs" or cause "episodes of anger . . . a couple of times in a month." (R. Doc. 27-1 at 5); (Tr. 437). It is unclear whether this hypothetical is presented by the claimant, a representative of the claimant or an ALJ. In response, the VE explains that the hypothetical limitations would take someone "out of the competitive job market." (R. Doc. 27-1 at 5); (Tr. 437). According to Plaintiff, this testimony demonstrates that the "Commissioner failed to prove that Plaintiff could do alternative work." (R. Doc. 27 at 2). The Court does not agree.

First, this testimony occurred outside of the relevant time period and was not germane the ALJ's determination with respect to Plaintiff's current application. Second, the limitations posed in the hypothetical are not consistent with the mental limitations found by the ALJ in this case.

Here, the ALJ limited Plaintiff to simple, routine and repetitive tasks with no more than occasional contact with coworkers and the general public. (Tr. 17). Although Plaintiff does not directly challenge this finding, the Court notes that the record contains substantial evidence supporting the ALJ's decision. While the record notes incidents of past issues with anger management (Tr. 663, 825), the totality of Plaintiff's mental health records do not support limitations greater than those found by the ALJ.

Plaintiff was negatively screened for depression on September 24, 2010. (Tr. 545) ("1. Little interest in doing things? 'Not at all.'; 2. Feeling down, depressed, or hopeless" 'Not at all.'"). At an evaluation in October of 2010, the examiner described Plaintiff as "superficially cooperative but very vague" and "apathetic about making sure I have accurate info[rmation] on him." (Tr. 664). Plaintiff likewise responded to some questions by insisting the information should already be in his chart. (Tr. 664). Overall, the examiner reported that Plaintiff's level of cooperation was "minimal" and he was someone who "underst[ood] [the] outcome of behavior." (Tr. 665). Plaintiff was "able to do serial 7's" and "spell a word forward and backward." (Tr. 664). The examiner found no problem with Plaintiff's ability to perform activities of daily living, he had mild memory problems, but was capable of managing his own money. (Tr. 665-66). When asked about his "current psychological functional status" Plaintiff responded that he was, "Up and down like everybody else." (Tr. 662). At a separate examination, Plaintiff reported that "medications help manage his symptoms and make him 'less combative.'" (Tr. 601). Plaintiff saw a VA psychiatrist in January 2011, who pointed out that he had not seen Plaintiff since May of 2008. (Tr. 938). During the examination, Plaintiff denied being depressed, but acknowledged recent trouble sleeping due to stressful life events. (Tr. 939-40). Plaintiff also declined any psychiatric medications. (Tr. 940-41). A VA psychologist examining Plaintiff in

March of 2012 (Tr. 1159-63) noted, "When asked about recent concerns or symptoms, he denied specific concerns." (Tr. 1161).  Although a VA doctor noted in May of 2012 that Plaintiff was experiencing symptoms of depression secondary to issues in his life (Tr. 1752), Plaintiff again refused any psychiatric medications in October of 2012. (Tr. 1731).  As such, the record evidence does not support the more extreme limitations posed to the unknown vocational expert, upon whose testimony Plaintiff relies.  Instead, there is substantial evidence supporting the ALJ's RFC determination and his ultimate finding that Plaintiff is capable of performing work existing in the national economy.

## V.   CONCLUSION

For the reasons given above, the Court finds substantial evidence supporting the Commissioner's decision.  The Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on May 20, 2016.

  **RICHARD L. BOURGEOIS, JR.**
  **UNITED STATES MAGISTRATE JUDGE**